WEBSTER CITY SAVINGS BANK, Appellee, v. MASSACHUSETTS BONDING & INSURANCE COMPANY, Appellant.

**PRINCIPAL AND SURETY:** Actions—Evidence—Sufficiency. Evidence reviewed, in action on a fidelity surety bond, and held to show abstraction of the employer's funds by the employee and consequent loss by the employer, within the terms of the bond.

Headnote 1:   32 Cyc. p. 138 (Anno.)

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

MARCH 15, 1927.

REHEARING DENIED JULY 1, 1927.

The defendant appeals from a judgment against it upon a fidelity bond.—*Affirmed.*

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellant.

*Burnstedt & Hemingway,* for appellee.

MORLING, J.—I.  William B. Rood was cashier of plaintiff bank during the time under consideration, and until about June 1, 1922. Defendant, by the bond sued on, bound itself to pay plaintiff "such pecuniary loss as the employer shall sustain of money or other personal property (including that for which the employer is responsible) through the fraud, dishonesty, forgery,

theft, embezzlement, wrongful abstraction, misapplication, or misappropriation, or any other dishonest or criminal act or omission, or by any of the employees listed.'' The bond provided:

''In case of recovery of any loss, or portion thereof, from other than insurance, whether by employer or insurer, the employer shall be entitled thereto until fully reimbursed, the excess, if any, to be paid to the insurer, except that the insurer shall be reimbursed from such recovery for actual expenses incurred in obtaining said recovery.''

Rood was a defaulter. The only claim now remaining in the case is one for $10,000, which may be conveniently designated, as it has been by counsel, as the ''Monarch Company transaction.'' E. S. Johnson was president of. the Monarch Company, of Webster City. He and Rood were on intimate terms, and appear to have had some common interests in the purchase or speculation in stock of the Monarch Company. About August 9, 1921, Johnson signed the Monarch Company's name to a note for $10,000, payable to the Blackhawk National Bank, and delivered it to Rood. Concerning this transaction Johnson testifies:

''That was a period when the hard times and the panic hit this town, and the Webster City Savings Bank had no borrowing capacity to discount its bills,—was hard up for actual cash. Mr. Rood asked me to help, and I told him I would do anything I could do legitimately. He said he had $10,000 or more coming in from sale of stock, and it should be there inside week or ten days; that they were below their cash reserve, and asked me to loan the credit of the Monarch Company to the extent of $10,000 to protect them,—said it would give the bank a cash reserve sufficient to meet their requirements at that time. * * * When I gave the $10,000 note, it was the understanding that it was to be used only for a week or ten days,—I didn't make any inquiry. Mr. Rood came to me and said that the money he had expected hadn't come, and it would be necessary to renew it,— gave a plausible reason for it. First issued for thirty days. First renewal was for perhaps 30 days. Seems it was renewed for a long period afterwards. Seems to me it was renewed three times. There was no inquiry made until after Mr. Cramer notified me that the account had been used,—sometime in June.''

The note was not put in the assets of the plaintiff, but was

sent to the Blackhawk National Bank, which gave plaintiff credit for the amount. The plaintiff opened on its books, under date of August 9, 1921, a savings account with the Monarch Company, to which the $10,000 was credited.. Johnson further testifies:

"The account was to be in the savings ledger, and was to be intact, and not touched by anyone. That is what I told W. B. Rood. * * * It was given as an accommodation note. We loaned the credit of the Monarch Company to the Webster City Savings Bank with instructions that the money could not be drawn out of the savings account. It wasn't to be used by ourselves or the bank as an account to be checked against, in any way,—was to be intact. It was made without the authority of the board of directors."

This evidence stands without contradiction. On the same date that this special account was opened,—August 9, 1921,—there was charged against it $3,997.46, and from that date to December 29th, charges were made against it reducing the balance to $130.22. The last renewal of the note was April 17, 1922, was for the full $10,000, was sued for by the Blackhawk National Bank, and judgment upon it against plaintiff was recovered. There is evidence that the withdrawals from the account did not come to the knowledge of the Monarch Company before June, 1922.

The defendant's main contention is that the plaintiff has not shown that it did, because of these matters, sustain any pecuniary loss. Defendant's contention is that the items charged against the savings account were properly chargeable against the Monarch Company,—that is, that the Monarch Company was liable to pay for them,—and that, because of that fact, plaintiff has not lost anything.

It would unduly protract this opinion to discuss specifically the various items charged against the savings account, or to discuss them further than is reasonably necessary, to show that it was for the jury to determine whether pecuniary loss resulted to plaintiff on account of them. We start with the undisputed fact that the $10,000 account was a special credit, to offset the unauthorized note of $10,000. Johnson had no right to give the accommodation note. Rood must have known that fact. He was instructed to keep the account intact, and that it was not to

be used for any purpose.  Plaintiff *prima facie* must pay to the Monarch Company the $10,000, without deduction.  On the very day that the account was opened, $3,997.46 was charged against it on a debit slip made out by Rood.  This charge against the account was a dishonest one.  Included in the charge, according to the debit slip, was an item listed as "money $2,000."  There was no such item of money which went to the Monarch Company at that time.  The books balanced.  Hence, on these facts alone, cash must have been withdrawn, to offset the item.  In the absence of explanation, it would be a proper inference that such withdrawal of cash was made by Rood.  It appears, however, that this $2,000 charge consisted of an undated check, drawn in the name of the Monarch Company on the First National Bank of Webster City, through E. J. Rood, who was secretary of the Monarch Company, and the brother of W. B. Rood.  The check has on it the indorsement of the plaintiff to "pay to any bank or banker August 8, 1921."  There is testimony that this indorsement indicates that the check came into the possession of the plaintiff August 8, 1921.  The Monarch Company had no funds in the First National Bank, and E. J. Rood knew it.  The Monarch Company had a commercial account with the plaintiff, and was owing plaintiff on promissory notes.  Defendant sought to prove by E. J. Rood that the check was part of a credit to the Monarch Company of $4,000, appearing on the plaintiff's books under date of May 4, 1921, more than three months prior to the time when the undated check apparently came into the plaintiff's possession and was charged to the Monarch Company's account.  It is defendant's claim that, at the time the $4,000 credit was given, the Monarch Company owed a steel bill of about that amount, for the payment of which this credit was raised.  W. B. Rood was not a witness.  E. J. Rood testifies:

"We did not have any money in the First National Bank; we expected that to be carried as a cash item by the Webster City Savings Bank.  It is customary in the bank for such checks as have been presented, to carry them as what is termed 'cash items;' and, if my memory is right, there were three of these checks issued.  When one check would become somewhat dilapidated, a new one would be charged in the place of it.  They did not have dates on them.  The original check was signed by Mr. Johnson.  I believe he wrote the check.  I objected to signing

the check when I knew the funds were not in the bank. * * *
he [Johnson] told me we had no funds available there. The
substance of it was that my brother Will would carry it as cash
item until we could cover it.''

'But his evidence also tends to show that the steel bill is rep-
resented by a charge on plaintiff's books against the Monarch
Company on May 5, 1921, amounting to $3,954.13, and that the
$4,000 credit of the day before was in no part made up of the
undated $2,000 check on the First National Bank, but was made
up of a credit given to plaintiff on account of the Monarch Com-
pany at the Hamilton State Bank for $2,000, and of a check
drawn by the Monarch Company on the First National Bank for
$2,000, dated May 4, 1921, the date of the $4,000 credit. This
latter check was charged back by the plaintiff to the Monarch
Company on May 18, 1921. Hence the Monarch Company got
no benefit from the $2,000 credit on account of the check of May
4th. On defendant's claim, Rood would have been carrying as
cash items two checks for $2,000 each, on the First National
Bank, in which he knew the Monarch Company had no funds,—
checks which he knew would not be paid,—a double fraud on the
plaintiff. The Monarch Company's account with plaintiff shows
credit May 2d of $2,000. The defendant's claim is that the stub
of the original undated check bears the date of April 21, 1921
(one witness says 1922), eleven days before this latter credit.
No claim is made, nor is there any evidence, that the credit of
May 2d was for the undated check. Furthermore, plaintiff's
president testifies to the effect that he at first thought the Mon-
arch Company had got the benefit of the undated check, but that,
on pursuing the inquiry:

''I found they had deposited trade acceptances in the bank
for more than that amount, which we appeared to have collected
for them without making any further credit.''

There is evidence tending to show that the Monarch Com-
pany books (except the stubs) contain no record of the undated
check; also, that the Monarch Company books do not harmonize
with the bank books. It is a fair inference from the record that
the bank books regularly balanced. There is no evidence that
they did not. That the frauds and dishonest acts of Rood in
question were committed without pecuniary loss to plaintiff, in
view or resulting, is improbable. Without going further into

details, it is sufficient to say that it was for the jury to determine whether plaintiff sustained pecuniary loss on account of the $2,000 charge.

The debit slip of August 9, 1921, for $3,997.46, contains two items: "Jug 150" and "Jug 300." It is claimed that "Jug" stands for the Thermos Jug Company, and that the Monarch Company was receiving its income and paying its bills. There is evidence to that effect. The Monarch Company and the Thermos Jug Company were independent organizations. Johnson was president of both. There is no evidence that the Monarch Company was legally bound for the liabilities of the Thermos Jug Company, or that the items charged against the Monarch Company were liabilities of the Thermos Jug Company. There is evidence that these and other charges claimed to be on account of the Thermos Jug Company were not authorized by the Monarch Company, and did not come to its attention until the next year. There is evidence also that the Thermos Jug Company had its own separate bank account (in the First National); that the Monarch Company did not receive all of its income. Prima-facie charges against the Monarch Company for other than its own liabilities cannot be used by the plaintiff in reduction of the amount that it must pay to the Monarch Company, and the plaintiff's loss is not reduced by such charges made by Rood against the Monarch Company that are not shown to be authorized or proper. A charge of $1,500 appears against the special account noted on the debit slip as "Stratford Int." Another one of $1,000 appears to have been made on the check of the Hawkeye Iron Company to Frank E. Oberg. There is evidence that these were not proper charges. Another, of $1,250, was made, against which there is a credit to the personal checking account of E. S. Johnson for a like amount, given by Rood. Johnson says he did not discover this until about June 1, 1922. Johnson had a checking account with plaintiff, which, before this credit was made, was overdrawn $1,226.49, leaving, after the credit, a balance in it of only $8.51. It appears to have been overdrawn most of the time since. The last item on the account shows a balance of $250.61, May 29, 1922. The petition was filed May 16, 1923. No point is made that the amount of such balance on May 29, 1922, is available to offset the plaintiff's loss. Without prolonging the opinion, it is sufficient to say that these matters

and the amount of the plaintiff's pecuniary loss on account of Rood's dishonesty were for the jury.

II.   Defendant contends that there was evidence showing that plaintiff had recovered from Rood and his relatives money and property sufficient to cover Rood's irregularities.   The evidence tends to show that plaintiff so recovered something less than $32,000.   The evidence is that plaintiff's losses amounted to much more than the amount of plaintiff's combined recoveries from Rood and from his relatives and from defendant.   The contract between the plaintiff and defendant is that, in case of recovery by either party, the plaintiff shall be entitled thereto until fully reimbursed, the excess, if any, to be paid to defendant.   The evidence will not sustain a finding that the property turned over to plaintiff was received in settlement of Rood's defalcations, or that Rood was released or discharged, or that plaintiff made any agreement to receive what it did in settlement or satisfaction.

III.   Defendant claims that a witness was allowed to give his conclusion that the Midwest Manufacturing Company was not incorporated.   It was the defendant that, on cross-examination of plaintiff's witness, brought out that fact, by asking the question, "'Was it an incorporation?'"   The answer was, "No, sir."   Besides, the evidence was without prejudice.

None of the other assignments of error require particular consideration.

Appellant files motion to strike appellee's answer to reply, and it is sustained.

The judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.